

DAVID E. DE LORENZI
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4743 Fax: (973) 639-6235
ddelorenzi@gibbonslaw.com

**CONTAINS CONFIDENTIAL INFORMATION FILED UNDER SEAL**

December 23, 2020

**VIA ECF**

Honorable Edward S. Kiel, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

   Re: *Rensselaer Polytechnic Institute v. Samsung Electronics America, Inc., et al.*
      **Civil Action No.: 2:19-cv-20097-KM-ESK**

Dear Judge Kiel:

  This firm, along with Axinn, Veltrop & Harkrider LLP represent defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Samsung") in the above-referenced matter. Pursuant to paragraph 7 of Your Honor's Civil Case Management Order, Samsung requests leave to file a motion for summary judgment of indefiniteness of the asserted claims of U.S. Patent No. 6,906,339 ("the '339 patent"), preferably to be resolved contemporaneously with claim construction to ease the burden on the Court and the parties in resolving this issue.

  Plaintiff Rensselaer Polytechnic Institute ("RPI") has asserted 15 claims across two patents, seven of which are part of the '339 patent. Each of the '339 patent claims requires nanoparticles having certain claimed sizes and size distributions when determined—i.e., measured—by a specified test: photon correlated spectroscopy ("PCS").[1] Sometimes referred to as *Honeywell*-type indefiniteness, Federal Circuit authority makes clear that patent claims like the ones asserted by RPI that specify the results of a test are indefinite where there are multiple ways of performing the claimed test that can lead to results both inside and outside the scope of claims, and where there is no guidance in the intrinsic evidence identifying a single approach that a POSA should use to perform the test. *See, e.g.*, *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1339-40 (Fed. Cir. 2003) (finding claims indefinite where "the sample preparation method is critical to discerning whether a [product] has been produced by the claimed process" and "the claims, the written description, and the prosecution history fail to give us, as the interpreter of the claim term, any guidance as to what one of ordinary skill in the art would interpret the claim to require"); *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 630 (Fed. Cir. 2015) ("Particularly . . . where different approaches to measurement are involved" in understanding the claims, "the patent and prosecution history must disclose a single known [measurement] approach or establish that . . . a person having ordinary skill in the art would know which approach to select.").

---

[1] For example, claim 1 of the '339 patent requires:

  A plurality of semiconductor nanoparticles having an average size between about 2 nm and about 100 nm with a size standard deviation of less than 60 percent of the average nanoparticle size determined by photon correlated spectroscopy (PCS) method, wherein the nanoparticles have an elementally passivated surface comprising a passivating element.

GIBBONS P.C.

December 23, 2020
Page 2

The claims of the '339 patent asserted by RPI are indefinite because (1) there are multiple ways to perform PCS, (2) that lead to results both inside and outside the scope of the claims, and (3) there is no guidance in the intrinsic evidence as to any single approach to measuring nanoparticle size and/or size distribution by PCS.  No further fact discovery is necessary to understand that the claims are indefinite for these reasons.  RPI makes clear in its responses to Samsung's invalidity contentions that PCS measurements can be performed using different variables.  *See, e.g.*, Plaintiff's L. Pat. R. 3.4A Responses to Defendants' Amended Invalidity Contentions at 10 ("POSAs knew how to select the appropriate solvent, the pH of the solvent, the presence of stabilizers, temperature, and time from solution preparation.").  RPI's responses also make clear that PCS can be performed using multiple reporting methods.  For example, RPI states that there are two PCS reporting modes that a POSA could select, referred to as "intensity%" and "weight%":

> A POSA performing a PCS measurement on a batch of nanoparticles to determine infringement would know all of the attributes of the sample (e.g., particle homogeneity, optical properties) necessary to convert between ***multiple reporting modes such as Intensity% and Weight%***, because they would have prepared the sample.

*Id.* (emphasis added).  RPI's own documents make clear, however, that depending on which PCS reporting method is selected, nanoparticles can have sizes that can be both ***inside*** and ***outside*** the scope of the claims.  These documents include both PCS testing results reported on the face of the '339 patent (reflecting "weight%" PCS testing reporting sizes inside the scope of the claims) and testing ***not reported anywhere in the '339 patent*** (reflecting "intensity%" PCS results outside the scope of the claims).

Moreover, the patents do not provide any guidance as to any ***single*** approach to measuring nanoparticle size and/or size distribution by PCS.  Indeed, although the patents reference both the "intensity%" and "weight%" reporting methods, the patents fail to express any preference for either one.  As a result, a POSA is not be able to determine the scope of the asserted claims with "reasonable certainty" as required by the U.S. Supreme Court.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."); *Dow*, 803 F.3d at 630.

There are least four reasons for why resolution of this issue need not be delayed.  ***First***, as referenced above, no further fact discovery is necessary to resolve the issue.  ***Second***, resolving indefiniteness on the merits contemporaneously with claim construction would allow the parties to narrow the scope of the case significantly at a relatively early stage.  Whether the PCS limitations are indefinite is dispositive of RPI's infringement claims directed to the '339 patent. Thus, addressing indefiniteness at the time of claim construction will allow the parties to narrow the issues in dispute, and would potentially remove an entire patent from the scope of the case before significant fact and expert discovery is undertaken. ***Third***, the schedule already contemplates a period of expert discovery in the context of claim construction.  Summary judgment briefing and discovery of the parties' experts can be worked into this schedule. ***Fourth***, indefiniteness is often intertwined with claim construction and other New Jersey courts have resolved *Honeywell*-type indefiniteness during the claim construction stage based on evidentiary support, including testing evidence, similar to what Samsung would rely upon for purposes of its motion.[2]

---

[2] In fact, in only six of 18 post-*Nautilus* New Jersey decisions that Samsung has identified did the Court defer resolution of indefiniteness until after *Markman*.  *Par Pharm., Inc. v. Sandoz, Inc.*, No. 18-14895, 2020 WL 1130387 (D.N.J. Mar. 9, 2020); *Adapt Pharma Operations Ltd. v. Teva Pharm. USA, Inc.*, No. CV 16-7721, 2019 WL 1789463 (D.N.J. Apr. 24, 2019); *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, No. 17-6921, 2019 WL 943532 (D.N.J. Feb. 26, 2019); *Horizon Pharma, Inc. v. Dr. Reddy's Labs., Inc.*, No. 15-3324, 2017 WL 5451748, at *5

GIBBONS P.C.

December 23, 2020
Page 3

      For example, in *Otsuka Pharm. Co. v. Torrent Pharm. Ltd., Inc.*, 151 F. Supp. 3d 525, 547, 549 (D.N.J. 2015), as part of claim construction, Judge Simandle found claims directed to "mean particle size" to be indefinite where, as here, the size-measurement technique designated by the claims and specification permit multiple methods of determining "size," each producing different results, and where nothing in the patents guide the skilled practitioner to utilize any one technique. *See id.* at 549 ("In this case, the wording of the claim term 'mean' and specification may be construed as designating an instrument by which to conduct a measurement of 'mean particle size,' but nothing therein guides the skilled practitioner whether to utilize the 'volume weighted mean' or the 'surface weighted mean' that such a device reports as measurements. The choice of 'volume' or 'surface' matters because each type lends to a different result.").

      In *Horizon Pharma Ireland Ltd. v. Actavis Labs., UT, Inc.*, No. 14-7992, 2016 WL 4408990, at *1 (D.N.J. Aug. 17, 2016), *adhered to on reconsideration*, No. CV 14-7992, 2017 WL 65538 (D.N.J. Jan. 6, 2017), *and aff'd sub nom. HZNP Medicines LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680 (Fed. Cir. 2019), again as part of claim construction, Judge Hillman found claims directed to "better drying time" to be indefinite where the specification disclosed two methods of determining drying time, each of which gave different results, and where the patents identified no guidance as to which method a POSA should utilize to assess drying time. *See id.* at *10 ("In short, the specification describes two different methods for evaluating 'better drying time,' and the two methods do not provide consistent results at consistent times. . . . [A] POSA would not know under what standard to evaluate the drying rate of the claimed invention. The result is that the 'better drying rate' basic and novel property is indefinite.").

      In *Otsuka*, the defendants relied principally on an expert declaration and prior art publications to support indefiniteness. In *Horizon*, the defendants relied on testing evidence. Like these cases, Samsung intends to present evidence of indefiniteness through both printed publications and testing evidence, including the testing that the patentee commissioned during the conception and reduction to practice of the claimed inventions.

      Based on the foregoing, Samsung respectfully requests leave to file a motion for summary judgment on indefiniteness of the asserted claims of the '339 patent. Additionally, Samsung respectfully requests that the Court order that the parties meet-and-confer on a schedule for summary judgment briefing and related discovery to occur contemporaneously with the claim construction phase, and any extensions to the claim construction schedule that may be necessary to facilitate a joint hearing on both claim construction and Samsung's motion for summary judgment. Samsung has met and conferred with RPI, who does not consent to the present letter motion. Should you or Judge McNulty, as the Court directs, wish to discuss this matter further, we will make ourselves available at the Court's convenience. We thank the Court for its consideration and assistance in this matter.

                                          Respectfully submitted,

                                          s/ David E. De Lorenzi
                                          David E. De Lorenzi

cc:     Counsel of Record via ECF & email

---

(D.N.J. Nov. 14, 2017); *Impax Labs., Inc. v. Actavis Labs. FL, Inc.*, No. 15-6934, 2017 WL 1900726 (D.N.J. May 9, 2017); *Fresenius Kabi USA, LLC v. Fera Pharm., LLC*, No. 15-3654, 2016 WL 5109142 (D.N.J. Sept. 20, 2016) (McNulty, J.).